SHAQUANA HARVEY, INDIVIDUALLY AND IN HER CAPACITY AS THE NATURAL TUTRIX OF JADEN HARVEY

* NO. 2023-CA-0756

*

* COURT OF APPEAL

*

VERSUS

* FOURTH CIRCUIT

*

ERIC WAYNE HAMBY, PLAQUEMINES PARISH SHERIFF'S OFFICE, THROUGH GERALD A. TURLICH, JR., SHERIFF, AND AMERICAN ALTERNATIVE INSURANCE CORPORATION

STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 64-194, DIVISION "A"
Honorable Kevin D. Conner, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *
(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Dale N. Atkins)
**ATKINS, J., CONCURS IN THE RESULT.**

Michael G. Riehlmann
Brett J. Prendergast
Jacque R. Touzet
ATTORNEY AT LAW
4603 S. Carrollton Ave.
New Orleans, LA 70119

    COUNSEL FOR PLAINTIFF/APPELLEE

Daniel R. Martiny
James B. Mullaly
Jeffrey D. Martiny
MARTINY & ASSOCIATES, LLC
131 Airline Drive
Suite 201
Metairie, LA 70001

    COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**May 17, 2024**

RLB
TFL

This appeal arises from the trial court's allocation of fault in an automobile accident involving Deputy Eric Wayne Hamby ("Hamby") and Jaden Harvey ("Jaden"). Jaden is represented by his mother, Shaquana Harvey ("Ms. Harvey"), in her capacity as his natural tutrix. The trial court found Hamby 65% at fault and Jaden 35% at fault in the cause of this crash. We affirm for the reasons below.

**FACTUAL BACKGROUND**

Hamby was traveling on Ferry Access Road in Point a la Hache in the afternoon of January 13, 2017. He was driving a Plaquemines Parish Sheriff's Office vehicle. Eight-year-old Jaden was riding a small motorbike[1] on the levee. At the point where Ferry Access Road intersects with the levee, the two collided. With his mother's permission and encouragement, Jaden was riding his motorbike to meet friends to play basketball. The ride to the basketball court was three to four miles. He had driven this route before. Jaden testified that he was traveling at 20 miles per hour[2] at the time of the collision. He also testified that his only training to drive his motorbike came from his brother, who taught him how to

---

[1] 2017 TTR 110 motorbike.
[2] Jaden testified that his motor bike did not have a speedometer but gauged it based on the amount of wind he felt going by him.

handle, break, and switch gears. He was taught that he had the right of way when driving past the ferry landing on the levee.  That last instruction was incorrect.

Neither party contests the amount of damages found by the trial court. However, the injuries Jaden suffered provide some insight into the speed of the vehicles and the force of the impact. Jaden lost consciousness and suffered injury to his leg so severe that it required surgery to install a metal rod to repair it.  He was hospitalized approximately three weeks and wore a hip-to-shin cast upon his release. Although he was wearing a helmet at the time of the wreck, it was not properly buckled.  It came off at impact and Jaden suffered a significant laceration of his head.  His injuries continued to give him pain through the time of trial.

**PROCEDURAL HISTORY**

After a bench trial on September 14, 2022, the court rendered judgment finding Hamby 65% at fault and Ms. Harvey 35% at fault. No fault was assigned to Jaden because of his youthful age but the trial court held Ms. Harvey liable for Jaden's comparative fault.  That judgment was appealed.[3]  On appeal, our Court held that the trial court erred when it determined that Jaden was not capable of negligence because of his young age.  The case was remanded to the trial court so that Jaden's comparative fault could be addressed.

On remand, no additional evidence was offered.  On the basis of the record at trial, the court issued an amended judgment on October 11, 2023, in which fault was apportioned 65% to Hamby and 35% to Jaden.  Ms. Harvey was not held to be at fault.  Hamby appealed the amended judgment contesting any liability on his

---

[3] *Harvey v. Hamby*, 2023-0084 (La. App. 4 Cir. 10/4/2023), 376 So.3d 225.

part. Ms. Harvey answered the appeal arguing that Hamby should have been assigned a greater degree of fault.

**ANALYSIS**

Hamby seeks relief on this appeal solely on the apportionment of fault. The Louisiana Supreme Court, in *Duncan v. Kansas City Southern Railway Co.,* 00-66, (La. 10/30/00), 773 So.2d 670, 680, held that the trier of fact is granted "much discretion" and is owed "some deference in allocating fault." It follows, according to the court, that the standard of review on appeal is manifest error.

Hamby argues that Jaden was negligent in 1) illegally operating his motorbike on an unpaved levee; 2) operating his motorbike at an unreasonable speed; and 3) approaching an intersection without exercising heightened observation. The record gives some factual support to Hamby's argument. On cross examination, Jaden agreed that he had tried to beat Hamby's car through the intersection. However, the transcript shows that moments later, Jaden contradicted himself, saying that Hamby's car approached so quickly that he could not do anything to avoid it.

Hamby also argues that even if the trial court did not err in finding Ms. Harvey was capable of fault, the allocation of 65% is excessive. An appellate court's determination of whether the trial court was clearly wrong in its allocation of fault is guided by the factors set forth in *Watson v. State Farm Fire & Casualty Insurance Co.*, 469 So.2d 967, 974 (La.1985). In *Watson*, the court wrote that when assigning fault the trier of fact must consider whether the conduct in question resulted from inadvertence, how great a risk the conduct created, the significance of the object of the conduct, the capacities of the actors, and any extenuating circumstances.

In the October 2023 judgment, the trial court did not make an extensive analysis of the respective fault of the parties. In reasons for judgment issued with the October 2022 judgment the court laid out the considerations for its apportionment. As we noted above, no new evidence was adduced on remand. Therefore, our court may rely on the methodology in the earlier judgment. The court wrote that:

> Hamby was traveling at a rate of approximately 16 miles per hour when approaching the Pointe-a-la-Hache Ferry dock. For an area that is heavily trafficked in the afternoon, 16 miles per hour is not a reasonable speed since drivers are not able to see over the levee until they have reached the top. During the trial, plaintiffs examined accident reconstructionist, Wayne Winkler, who opined that 16 miles per hour was an unreasonable speed considering the environment. Mr. Winkler further explained that, with consideration of perception and reaction time, Mr. Hamby was able to see Jaden Harvey on his motorbike when his vehicle was 38-44 feet from the point of impact; however, because Mr. Hamby was driving at a rate unreasonable for the environment, he was unable to stop before the collision occurred.

The trial court agreed with Hamby that Jaden's use of the levee as a roadway was contrary to law. However, the court also noted that it is customary for people to ride on the levee. Under the circumstances, the trial court ruled that Hamby should have foreseen the possibility that someone may have been approaching the intersection of the levee and the ferry ramp. It is also worth noting that a significant number of government vehicles are legally permitted to drive on the levee. This heightens the likelihood of intersectional collisions if drivers fail to account for vehicles in both directions approaching the levee.

The trial court properly took into account the *Watson* rule that a court must consider the capacity of the actors. In keeping with that instruction, the trial court

held that Jaden's conduct must be judged according to his age. Hamby, as an adult, should not be judged by the same standard.

It appears from the judge's written reasons for judgment in the judgment and the amended judgment that the trial court adequately considered the factors enumerated in *Watson*. We do not find that the apportionment is clearly wrong or manifestly erroneous. Based on the standard of review by which we are bound, we must affirm the trial court's apportionment of fault. As we have found the trial court correctly apportioned fault, we find no merit to Ms. Harvey's claims raised by her Answer. Therefore, no award of costs is warranted.

**AFFIRMED**